UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jack Mann, | ) |
| Plaintiff, | ) |
| | ) Case No. 16-cv-09623 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| Heather Bales, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jack Mann ("Mr. Mann") originally brought this action in the Middle District of Pennsylvania. In his amended complaint, Mr. Mann asserts 19 claims – two federal and 17 state law claims – against Defendants. (Dkt. 14). Judge Matthew W. Brann of the Middle District of Pennsylvania dismissed this case for lack of personal jurisdiction and transferred it to the Northern District of Illinois. Defendants George F. Mann III, Julia A. Mann, Judson H. Mann, G.F. Mann Agency, Ltd. (the "GMA"), and Global Risk Services ("GRS") (collectively, the "Mann Defendants") filed a motion to dismiss. (Dkt. 128). Defendants Heather Bales ("Ms. Bales") and Mann Insurance Agency, Inc. ("MIA") (collectively, the "Bales Defendants") also filed a motion to dismiss. (Dkt. 130). For the following reasons, the Mann Defendants' motion [128] is granted and the Bales Defendants' motion [130] is granted.

**Background**

In April 2005, Mr. Mann and his then wife, Ms. Bales, participated in estate planning. (Dkt. 14 ¶ 63). As part of the planning process, Mr. Mann assigned Ms. Bales power of attorney which permitted her to convert Mr. Mann's assets, among other things, if he were ever incapacitated. (Id. ¶ 63).

Mr. Mann and Ms. Bales jointly owned MIA, an insurance agency. Mr. Mann claims that he had a contract with MIA pursuant to which he permitted his book of business ("BOB") to be "housed" at MIA which, in turn, allowed MIA to receive residual commissions. (Id. ¶ 25). Under this purported contract, MIA was to pay Mr. Mann 50% of the income from the residual commissions after it paid the company's expenses. (Id. ¶ 15). Strangely, he claims that this "implied contract" provided that MIA could purchase the BOB from him for 1.5 times the total annual commissions from the 12-month period preceding the date of the sale, (Id. ¶ 27), even though he admits that the contract has no specific items relating to the sale of the BOB. (Id. ¶ 29). Mr. Mann does not provide this Court with a copy of this contract.

In 2008, MIA and GFM entered into a reorganization agreement. (Id. ¶ 20; Dkt. 140 at PDF pp. 135-147). The Agreement listed the BOB as "Jack Mann's Book of Business." (Dkt. 14 ¶ 20; Dkt. 140 at PDF pp. 149-185).

Mr. Mann was incarcerated in 2010 for a crime that is completely unrelated to the instant matter; Ms. Bales initiated divorce proceedings shortly thereafter. (Dkt. 14 ¶ 63). The marital settlement agreement (the "settlement agreement"), which was signed on August 30, 2010, and incorporated in a September 24, 2010, judgment of dissolution of marriage (the "dissolution judgment"), awarded Ms. Bales sole ownership of MIA and all of its assets. (Dkt. 128-2 at PDF p. 14, Marital Settlement Agreement, Article X, Section 10.1.C). The settlement agreement and the dissolution judgment do not specify whether the BOB is Mr. Mann's personal property or MIA's asset. In or around April 2014, Ms. Bales sold MIA to Judson Mann, George Mann, Julia Mann, GMA, and GRS. (Dkt. 14 ¶ 15). The BOB was included in this sale. (Id. ¶ 15).

Mr. Mann asserts that Ms. Bales sold several of his personal items using the power of attorney and justified said sales by claiming that Mr. Mann was incapacitated due to his incarceration. (Id. ¶¶ 63, 64). Mr. Mann claims that Ms. Bales deprived him of the opportunity to

2

auction the BOB on the insurance market by selling it without his involvement. (Id. ¶ 15). He also claims that the Defendants intended for the sale of the BOB to result in his indigency as a consequence. (Id. ¶ 49).

Prior to Mr. Mann's incarceration, Defendants allegedly reached out to clients in the BOB. The communications purportedly discussed Mr. Mann's inability to provide adequate service to the customers. (Id. ¶ 56). The communications also discussed fees that the customers were paying above and beyond normal premiums. (Id. ¶ 61).

Based on these facts and allegations, Mr. Mann asserts the following claims: intentional interference with prospective economic advantage (Count 1), conversion (Count 2), breach of contract (Count 3), unjust enrichment (Count 4), replevin (Count 5), breach of fiduciary duty (Count 6), tortious interference with a contract (Count 7), intentional infliction of emotional distress (Count 8), defamation (Count 9), illegal use of Illinois statutory short form power of attorney for the illegal conversion of Mann's assets (Count 10), violations of the Illinois Uniform Fraudulent Transfer Act (Count 11), constructive fraud (Count 12), actual fraud (Count 13), violation of the Illinois Trade Secrets Act (Count 14), violations of the Illinois Consumer Fraud and Deceptive Practices Act (Count 15), violations of the Telephone Consumer Practices Act ("TCPA") (Count 16), illegal use of power of attorney for illegal conversion (Count 17), fraudulent conveyance (Count 18), and a civil RICO claim (Count 19).[1]

Plaintiff originally filed this action in the Middle District of Pennsylvania. Magistrate Judge Susan E. Schwab recommended that the district court dismiss this case for lack of personal jurisdiction in the Middle District of Pennsylvania and transfer it to the Northern District of Illinois. (Dkt. 85). In her recommendation, she found that Mann's amended complaint raised at least arguable TCPA and RICO claims, but she declined to rule on whether he actually stated a claim

---

[1] The civil RICO claim is listed as "Count 18" in the amended complaint.

upon which relief could be granted. (Id. at 4, n. 2). District Judge Matthew W. Brann adopted Magistrate Judge Schwab's recommendation in its entirety. (Dkt. 103); *see also Mann v. Bales*, No. 4:15-CV-01440, 2016 WL 5864091, at \*4 (M.D. Pa. Oct. 7, 2016). Judge Brann found that because Mr. Mann failed to show that he did not intend to return to Illinois after his incarceration, and because Defendants were all Illinois residents, the parties were not diverse and there was no diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. 103 at 7-9). Additionally, Judge Brann concluded that Mr. Mann's TCPA and RICO claims were not so devoid of merit as to not involve a federal controversy. (Id. at 11).

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the allegations. A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted). Courts need not accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements. *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014) (citation omitted).

District courts have jurisdiction over cases that raise a federal question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32; *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802 (7th Cir. 2009). A party seeking to invoke this Court's diversity jurisdiction bears the burden of demonstrating that the requirements for diversity are met. *Smart*, 562 F.3d at 802-03 (citations omitted). This court must dismiss actions where there is no federal question or where there is no diversity for want of jurisdiction. *Id.* at 802.

**Discussion**

Defendants move to dismiss Mr. Mann's complaint on various grounds. They argue that resolution of the claims would require this Court to intrude on the state court divorce proceedings between Mr. Mann and Ms. Bales and should therefore dismiss this case under the *Burford* abstention doctrine. They also argue that the complaint should be dismissed because Mr. Mann has failed to state plausible federal claims and because there is no diversity jurisdiction. This Court first addresses Mr. Mann's federal claims.

*a. TCPA and civil RICO*

The TCPA prohibits individuals from making calls using automatic telephone dialing systems, 47 U.S.C. § 227(b)(1)(A), from initiating telephone calls to residential telephone lines using artificial or prerecorded voices to deliver messages, § 227(b)(1)(B), or from using fax machines, computers, or other devices to send unsolicited advertisements to fax machines, § 227(b)(1)(C), absent an emergency or consent. Under the TCPA, a plaintiff must have statutory standing to bring his claims. To determine whether Mr. Mann has statutory standing, this Court must determine whether Mr. Mann's claims fall within the zone of interests protected by the TCPA. *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150, at *8 (N.D. Ill. Aug. 8, 2016) (St. Eve, J.) (citing *Pennsylvania Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015)). The TCPA confers a private right of action on the basis of individualized violations; it does not permit a plaintiff to commence an action in the name of consumer protection. *Tel. Sci. Corp.*, 2016 WL 4179150 at *9; *see also* 47 U.S.C. § 227(b)(3); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) ("only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation . . . Someone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone").

Mr. Mann alleges that Defendants used automatic dialing systems to call customers listed in the BOB on their cellular phones without their express consent. (Dkt. 14 ¶ 94). Mr. Mann cites 47 U.S.C. § 227(b)(1)(C) as the basis for his claim, but he does not allege in the complaint that Defendants reached out to the customers via fax. Therefore, Mr. Mann's claim is best treated as one brought under § 227(b)(1)(A)(iii), which prohibits calls made to cellular phones using automatic dialing systems. This provision protects "called parties" from receiving non-emergency, unconsented, automated calls for which the "called parties," as opposed to the initiating parties, have to incur a charge. *Tel. Sci. Corp.*, 2016 WL 4179150 at *10. Accordingly, the TCPA protects privacy rights, public safety interests, and interstate commerce, and ultimately protects people from bothersome robocalls and their associated costs. *Id.* at *12.

While Mr. Mann brings suit on behalf of customers listed in the BOB, he does not allege that he personally received any unsolicited communications. His TCPA claim, therefore, is not one seeking to assert his privacy rights. *Id.*; *see also Leyse*, 804 F.3d at 326 ("It is the actual recipient [of the communication], intended or not, who suffers the nuisance and invasion of privacy."). Mr. Mann offers no argument as to how his claim addresses public safety or interstate commerce. Accordingly, Count 16 is dismissed.[2]

Turning to Mr. Mann's civil RICO claim – Congress created a civil cause of action for any person "injured in his business or property by reason of violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c). The civil RICO statute prohibits four kinds of conduct. *See* 18 U.S.C. §§ 1962(a)-(d). Mr. Mann does not specify the subsection under which Defendants' conduct falls. That, however, does not preclude this Court from engaging in an analysis of his claim. To state a claim under any one of these subsections, a plaintiff must allege a "pattern of racketeering activity." *Id.*

---

[2] Mr. Mann's opposition briefs allege that Defendants violated the TCPA by sending faxes and emails. Mr. Mann does not allege that he personally received any faxes or emails. Accordingly, this Court dismisses Count 16 to the extent that it is also based on unsolicited faxes and emails.

6

"Racketeering activity" consists of an exhaustive list of multiple federal and state criminal offenses. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires at least two acts of racketeering activity committed within a ten year period. 18 U.S.C. § 1961(5); *CIB Bank v. Esmail*, No. 04 C 4870, 2004 WL 3119027, at *3 (N.D. Ill. Dec. 28, 2004) (Aspen, J.). The racketeering predicates must be related and they must amount to, or pose a threat of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Defendants argue that Mr. Mann's RICO claim should be dismissed because he fails to allege a single predicate act under RICO. They argue that torts and contract claims such as conversion, slander, and unjust enrichment are not offenses which can constitute predicate acts for purposes of establishing a pattern of racketeering. *Toms v. Pizzo*, 4 F. Supp. 2d 178, 183 (W.D.N.Y. 1998); *Wagner v. Magellan Health Servs., Inc.*, 125 F. Supp. 2d 302, 305 n. 1 (N.D. Ill. 2000) (Bucklo, J.) (interference with a contractual relation and interference with prospective economic advantage are torts, not crimes, and so are not predicate RICO acts). Mr. Mann appears to argue in his opposition briefs that the predicate acts are "conversion of [] property – theft," (Dkt. 140 at 30), wire fraud, (Dkt. 140 at 36) ("It is reasonably for[e]seeable that all of these acts were done through and by wire fraud."), and violations of the Defend Trade Secrets Act ("DTSA"). (Dkt. 144).

This Court agrees with Defendants that Mr. Mann has failed to plead a predicate act. Mr. Mann's complaint alleges common law torts and violations of Illinois statutes, none of which are listed as predicate acts in 18 U.S.C. § 1961(1). This Court also notes that "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Thus, this Court rejects Mr. Mann's attempt to allege mail fraud, violations of the DTSA, and other predicate acts in his opposition briefs. *Schoenhorn v. City of Chicago*, No. 95 C 3677, 1996 WL 521398, at *12 (N.D. Ill. Sept. 11, 1996) (Nordberg, J.) (rejecting plaintiffs' attempt to amend pleading through responsive brief alleging

7

Hobbs Act violations as predicate acts and dismissing civil RICO claim). Count 19 is therefore dismissed.[3]

*b. Diversity jurisdiction*

Because no federal question remains, this Court turns to the issue of exercising diversity jurisdiction over this action. Defendants argue that no diversity exists to support subject-matter jurisdiction under 28 U.S.C. § 1332, therefore the remaining state law claims should be dismissed. Diversity of citizenship does not exist unless *each* plaintiff is a citizen of a different state from *each* defendant. *Owen Equip & Erection Co. v.* Kroger, 437 U.S. 365, 373 (1978). This Court adopts the reasoning set forth in Judge Brann's opinion, (Dkt. 103 at 8-9), and finds that Mr. Mann is non-diverse from Defendants because he was a citizen of Illinois prior to his incarceration, he did not allege that he intended to remain in the state where he was incarcerated upon his release, and all Defendants were alleged to have been citizens of Illinois. (Dkt. 14 ¶ 2). Mr. Mann does not challenge Judge Brann's determination that there is no diversity; instead, he argues in his briefs that there is now diversity because Ms. Bales changed her domicile to Florida. Even if this Court determined that Ms. Bales's citizenship had changed, which it cannot at this stage, *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("Whether § 1332 supplies jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction."), that change would not affect this Court's finding as Mr. Mann still shares citizenship with the rest of Defendants. Accordingly, this Court dismisses the remaining state law claims for lack of subject-matter jurisdiction.

*c. A note on abstention under* Burford

Defendants argue that dismissal of a majority of Mr. Mann's claims is appropriate based on the *Burford* abstention doctrine because all of the claims relate to the BOB. *Burford v. Sun Oil Co.*, 319

---

[3] Because this Court dismisses Mr. Mann's RICO claim for failure to plead any predicate act, it declines to address the parties' other RICO arguments.

U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). Dismissal under *Burford*, however, is inappropriate where, as here, a plaintiff primarily seeks monetary relief. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730–31, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). While *Burford* does not affect this Court's dismissal analysis, it may affect how this Court moves forward if Mr. Mann files an amended complaint. *Burford* abstention may apply in federal cases where a district court's decision would interfere with a substantial state concern. *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397, at *2 (N.D. Ill. Nov. 1, 2005) (Gottschall, J.). Courts have applied *Burford* in cases where the federal claims required the district court to decide the ownership of property, which should have or would have been determined in state court divorce proceedings. *See, e.g., Golden*, 2005 WL 2897397 at *2 (staying copyright claim where divorce court's resolution of property dispute; *Johnson v. Thomas*, 808 F. Supp. 1316, 1320 (W.D. Mich. 1992); *Farkas v. D'Oca*, 857 F. Supp. 300, 304 (S.D.N.Y. 1994).

Illinois law provides state courts with the power to distribute marital property and to enforce and modify dissolution judgments. *See* 750 ILCS 5/502, 503, 511. Here, the Circuit Court of Will County has retained jurisdiction over the divorce proceedings between Mr. Mann and Ms. Bales for the purpose of enforcing the terms and provisions of the dissolution judgment and the settlement agreement. (Dkt. 128-2 at PDF p. 5, Judgment for Dissolution of Marriage, ¶ G). While Mr. Mann and Ms. Bales's divorce has been final for approximately seven years, it is clear that the parties still dispute whether the BOB was Mr. Mann's personal property or MIA's asset. The settlement agreement and the dissolution judgment do not explicitly resolve the issue either way. This Court agrees with Defendants that a majority of Mr. Mann's claims, as currently pleaded, relate to the ownership of the BOB and finds that resolving these claims would ultimately require this Court to rule on the parties' property rights. Accordingly, this Court believes that this property dispute should be resolved by the court that dissolved Mr. Mann and Ms. Bales's marriage.

**Conclusion**

For the foregoing reasons, the Mann Defendants' motion to dismiss [128] and the Bales Defendants' motion to dismiss [130] are granted. Mr. Mann's federal claims are dismissed without prejudice because he has failed to state a claim upon which relief can be granted. The remaining state law claims are also dismissed without prejudice because complete diversity between the parties does not exist. This Court grants Mr. Mann 45 days from the entry of this order to amend his complaint. As to this Court's *Burford* concerns, in the time between this order and the filing of the amended complaint, one of the parties should seek a declaration from the divorce court about ownership of the BOB (keeping in mind that Mr. Mann is incarcerated). Status hearing set for December 4, 2017, at 9:30 AM. Defendants are to make Mr. Mann available for the status by telephone. They should provide the courtroom deputy with contact information for Mr. Mann at least three days prior to the status.

As a final note, it is clear from the complaint and the briefing that there are emotional undertones to this case stemming from the divorce proceedings, the family relationships, and the circumstances of Mr. Mann's incarceration. Moving forward, this Court expects the parties to be as civil as possible.

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED:  September 29, 2017